# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **GUSTAVO MORALES-ORTIZ,** | : | **NO. 11-143** |
| **a/k/a "Gustavo Morales,"** | : | |
| **Defendant.** | : | |

## MEMORANDUM

**GENE E.K. PRATTER, J.**                                                           **SEPTEMBER 12, 2011**

Gustavo Morales-Ortiz has been charged with possession with intent to distribute 50 grams or more of a mixture or substance containing methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B); possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); possession of a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1); and with possession of a firearm by an illegal alien in violation of 18 U.S.C. § 922(g)(5)(A).

Mr. Morales-Ortiz moves to suppress all evidence gathered pursuant to four search warrants issued by Pennsylvania authorities on the grounds that such warrants lacked sufficient information to support a finding of probable cause, and that the warrants used to search Mr. Morales-Ortiz's vehicles and residence contained either false material information or omitted relevant material information. The Court heard oral argument from counsel on July 21, 2011 and reviewed the legal authorities relied upon by the parties. As a result, for the reasons set forth below, Mr. Morales-Ortiz's Motion to Suppress Evidence is denied.

## FACTUAL BACKGROUND

Mr. Morales-Ortiz apparently was caught up in searches that were conducted as part of an ongoing drug investigation, known as Operation Boomerang, that the Berks County Narcotics Task Force conducted during November 2010 in Reading, Pennsylvania. At 7:20 a.m. on November 5, 2010, a cooperating witness informed Investigator John Lackner of the City of Reading Police Department that "a Mexican male known to the [witness] as Gustavo" would be distributing a large quantity of methamphetamine at 8:00 a.m. in a Fern Avenue parking lot. The witness offered a physical description of "Gustavo," specified that he would be driving a mid-1990s red Honda Civic with Pennsylvania registration, and also gave a detailed description of "Gustavo's" residential address. At 7:59 a.m., officers, including Investigator Lackner, observed Mr. Morales-Ortiz arrive at the parking lot in a red Honda Civic, all as suggested by the cooperating witness.

Specifically, police noted that Mr. Morales-Ortiz was driving a red 1993 Honda Civic with Pennsylvania registration. After making contact with Mr. Morales-Ortiz, officers independently confirmed the accuracy of the cooperating witness's physical description of Mr. Morales-Ortiz. Once the officers made actual contact with Mr. Morales-Ortiz, they confirmed that the address on Mr. Morales-Ortiz's Pennsylvania driver's license also matched the cooperating witness's information. Mr. Morales-Ortiz himself verified to the officers that he currently lived at the address shown on his driver's license. Officers also then confirmed with the Immigration and Customs Enforcement Agency that Mr. Morales-Ortiz was a fugitive alien who was scheduled for deportation because of prior criminal convictions. All of this information was recounted in Investigator Lackner's probable cause affidavit.

Police detained Mr. Morales-Ortiz pending the application for a search warrant for the 1993 Honda Civic, which had been driven to Reading City Hall. While in police custody, Mr. Morales-Ortiz expressed concern that his vehicle doors remain locked. Investigator Lackner filed his affidavit of probable cause with a Berks County district justice seeking authorization to search Mr. Morales-Ortiz's 1993 Honda. The district justice issued a search warrant and officers executed the warrant, discovering in the Honda Civic large quantities of methamphetamine and cocaine, documents addressed to Mr. Morales-Ortiz, and $929 in currency. Later analysis determined that the officers seized approximately 147.8 grams of methamphetamine and approximately 347.8 grams of cocaine from the 1993 Honda.

Based upon the discovery of drugs in Mr. Morales-Ortiz's vehicle, officers then obtained a search warrant for Mr. Morales-Ortiz's apartment. Investigator Lackner's affidavit for this warrant restated the facts he had previously recounted in the affidavit for the warrant to search Mr. Morales-Ortiz's 1993 Honda. The affidavit also noted that the officers' search of the 1993 Honda resulted in the discovery of a "bulk quantity" of methamphetamine and cocaine and "numerous documents" referencing Mr. Morales-Ortiz's residence. Further, the affidavit stated that the purpose of this warrant for the residence was to search for evidence pertaining to the drugs discovered during the search of the 1993 Honda. An appropriate Commonwealth justice approved the warrant for the residence, and upon its execution, police used keys seized from Mr. Morales-Ortiz to unlock a locked closet in the house. This closet contained documents addressed to Mr. Morales-Ortiz, a loaded Colt .380 handgun, ammunition, a digital scale with suspected cocaine residue, and bulk quantities of suspected cocaine and methamphetamine.

Upon the discovery of these suspected narcotics, officers suspended their search and sought a third warrant – the second such warrant for Mr. Morales-Ortiz's residence – that specified controlled substances in the residence could be seized by the officers. After a district justice authorized this third warrant, officers resumed their search of Mr. Morales-Ortiz's apartment. Later analysis determined that officers seized approximately 98 grams of methamphetamine and approximately 150 grams of cocaine from Mr. Morales-Ortiz's residence.

When officers continued the search of Mr. Morales-Ortiz's residence, a narcotics detection K-9 unit dog alerted to the presence of narcotics in a black 2004 Acura TSX in Mr. Morales-Ortiz's garage. This prompted officers to seek and obtain a fourth warrant to search the 2004 Acura for controlled substances, and related items, including weapons. Pursuant to this fourth warrant, officers discovered a loaded Bryco .380 handgun during their search of the 2004 Acura.

**LEGAL STANDARD**

Mr. Morales-Ortiz moved to invalidate the four warrants that the officers executed in their search of his residence and two vehicles.

An applicant for a warrant must present to the issuing authority facts sufficient to enable that official to make a determination of probable cause. Whiteley v. Warden, Wyoming State Penitentiary, 401 U.S. 560, 564 (1971). This Court may not engage in a *de novo* review of the magistrate's determination that probable cause was presented. United States v. Whitner, 219 F.3d 289, 296 (3d Cir. 2000). Rather, the Court is constrained to approach the issuer's decision with "great deference" for purposes only to ensure that the issuing authority "had a substantial basis for concluding that probable cause existed." United States v. Conley, 4 F.3d 1200, 1205

(3d Cir. 1993).  See also Illinois v. Gates, 462 U.S. 213, 236 (1983); Spinelli v. United States,

393 U.S. 410, 419 (1969); United States v. Kepner, 843 F.2d 755, 762 (3d Cir. 1988).

The Third Circuit Court of Appeals describes the "substantial basis" standard as requiring

the reviewing court to "determine only whether the affidavit provides a sufficient basis for the

decision the [issuing authority] actually made."  United States v. Jones, 994 F.2d 1051, 1057 (3d

Cir. 1993).  When in doubt, then, the reviewing court should resolve the issue "largely" by

acknowledging "the preference to be accorded to warrants."  Gates, 462 U.S. 237 n.10 (citation

omitted).  Moreover, the Court is obliged to consider the "totality of the circumstances,"

including the affiant's training and experience, the information recounted and the practicality of

the common sense decision made by the issuing authority as to whether there was a "fair

probability that contraband or evidence or a crime [would] be found in a particular place."  Id.

**DISCUSSION**

*A.  The Warrant to Search Mr. Morales-Ortiz's Honda Civic*

Probable cause can be established if "police investigation verified specific details of [an

informant's] tip," as independent police corroboration provides a "substantial basis" for crediting

an informant.  United States v. Stearn, 597 F.3d 540, 555-56 (3d Cir. 2010) (citing Gates, 462

U.S. at 225, 244-45).  Here, the Government urges the Court to follow Stearn.

 In Stearn, a confidential informant offered a tip to the Philadelphia Police Department

that multiple individuals were engaged in drug distribution crimes.  Id. at 545.  Over the course

of a week, officers independently corroborated the informant's tip before applying for and

executing warrants to search the defendants' residences and businesses.  Id. at 546-48.  Evidence

collected in these searches led to the indictment of the defendants for federal narcotics and

weapons offenses.  Id. at 548.  The district court granted in part the defendant's motion to

suppress the evidence, as the search warrants did not specifically confirm or specify the

informant's reliability or credibility.  Id. at 549.  However, the Third Circuit Court of Appeals

reversed the district court's decision to suppress the evidence.  Citing Gates, the Court of

Appeals held that the independent investigation by the police and the attendant corroboration of

the informant's information supplied a "substantial basis" to establish probable cause.  Id. at 556

(citing Gates, 462 U.S. at 245).

Here, the cooperating witness provided the Berks County Narcotics Task Force with

information that "a Mexican male known . . . as Gustavo" would be distributing a large quantity

of methamphetamine at 8:00 a.m. in a Fern Avenue parking lot.  This witness offered a detailed

physical description of Gustavo, and offered that he was driving a mid-1990s red Honda Civic

with Pennsylvania registration, as well as a detailed description of his residential address.  When

Mr. Morales-Ortiz arrived in the Fern Avenue parking lot in his red 1993 Honda Civic with

Pennsylvania registration at 7:59 a.m., police stopped his vehicle and independently corroborated

the witness's physical description of the suspect "Gustavo" and could see for themselves that he

was driving a vehicle as the witness had described.  The officers also independently verified that

the 1993 Honda was registered to Mr. Morales-Ortiz.  Further, Mr. Morales-Ortiz's

identification card listed a residence that matched the witness's account, and Mr. Morales-Ortiz

himself confirmed that he lived at the address printed on the identification card.  Thus, the police

independently corroborated each of the individual details provided by the cooperating witness,

which Investigator Lackner (himself an experienced narcotics law enforcement officer)

recounted in the affidavit of probable cause.  As in Stearn, the officers' independent

investigation, observation, and corroboration of the witness's account provides a "substantial basis" for crediting the witness and establishing probable cause.[1] <u>Stearn</u>, 597 F.3d at 555-56 (citing <u>Gates</u>, 462 U.S. at 225, 244-45).

Further, a "magistrate may give considerable weight to the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found." <u>Whitner</u>, 219 F.3d at 296; <u>United States v. Lawson</u>, 999 F.2d 985, 987 (6th Cir. 1993). Investigator Lackner's affidavit described suspect behavior by Mr. Morales-Ortiz, such as that he "was very concerned that [officers] lock the doors of his vehicle." Thus, in addition to the independently corroborated information, Investigator Lackner and members of the Berks County Narcotics Task Force independently had suspicions regarding Mr. Morales-Ortiz as to why he wanted his vehicle to remain locked. Similar to the holding in <u>Whitner</u>, this Court grants "considerable weight" to the experience of Investigator Lackner, who has "[taken] part in hundreds of drug investigations" in his law enforcement service. <u>See</u> <u>Whitner</u>, 219 F.3d at 296.

As such, observing "great deference" to the decision of the district justice, the Court finds that the Lackner affidavit established probable cause to justify a search of Mr. Morales-Ortiz's red 1993 Honda Civic. <u>See</u> <u>Conley</u>, 4 F.3d at 1205. Accordingly, the Court denies Mr. Morales-Ortiz's motion to suppress evidence related to the search of the 1993 Honda.

---

[1] Mr. Morales-Ortiz's general contention that all of the search warrants contained false information and/or omitted relevant material information is without merit. The "omission" that the witness "was the subject of [a related] search warrant" was not a dispositive fact and was rendered moot by the pertinent facts that Investigator Lackner included in his affidavit to establish probable cause. Further, Mr. Morales-Ortiz's assumption that the witness "would not be available for trial," due to a vague and unexplained "Fifth Amendment privilege," is not established in either the briefings to the Court or case law.

***B. The First Warrant to Search Mr. Morales-Ortiz's Apartment***

"[D]irect evidence linking the place to be searched to the crime is not required for the issuance of a search warrant." United States v. Hodge, 246 F.3d 301, 305 (3d Cir. 2001) (quoting Conley, 3 F.3d at 1207). "Instead, probable cause can be, and often is, inferred by 'considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide' the fruits of his crime." Id. (quoting Jones, 994 F.2d at 1051).

In Hodge, a reliable police informant told officers that the defendant was scheduled to distribute crack cocaine on a public street in St. Croix. Id. at 304. Knowing the time and address of the drug sale, officers observed the intended drug sale. Id. However, Hodge discovered the officers' presence and when fleeing the scene, officers observed Hodge dispose of a large quantity of crack cocaine in a trash can. Id. "Based upon [the] training and experience" of the investigating officer, the police applied for a warrant to search Hodge's residence based upon prior experience "that persons involved in the receipt and distribution of controlled substances commonly keep within their residences evidence of their criminal activity." Id. at 304-05. After a magistrate issued the warrant, police discovered further evidence of drug distribution in Hodge's residence. Id. at 305. However, the district court suppressed the evidence from Hodge's home for lack of probable cause, because "the affidavit failed to establish a nexus between Hodge's drug activity and Hodge's home." Id. Reversing the district court, the Court of Appeals held that given (1) a credible informant's tip to the police and (2) the circumstantial evidence surrounding the crime, "it is reasonable to infer that a person involved in drug dealing on such a scale would store evidence of that dealing at his home." Id. at 306. Thus,

the evidence provided for the warrant "provided a substantial basis from which to infer that a search of Hodge's home would yield evidence of Hodge's drug-related activities," and the court admitted the evidence collected pursuant to the search warrant.  Id. at 307-10.

In his affidavit for the warrant to search Mr. Morales-Ortiz's residence, Investigator Lackner restated the facts previously used in the affidavit for the warrant to search Mr. Morales-Ortiz's 1993 Honda.  Investigator Lackner also noted that the search warrant properly served on Mr. Morales-Ortiz concerning the 1993 Honda resulted in the discovery of a "bulk quantity" of methamphetamine and cocaine and "numerous documents" documenting Mr. Morales-Ortiz's residence.  Accordingly, the application for the second warrant requested to search the specified residence of Mr. Morales-Ortiz for any "currency, documents, records, etc." related to the drug trafficking crime for which Mr. Morales-Ortiz was arrested.  A Pennsylvania district justice issued the search warrant for Mr. Morales-Ortiz's apartment.  Once officers executed the warrant, the police discovered documents addressed to Mr. Morales-Ortiz, a loaded Colt .380 handgun, ammunition, a digital scale with suspected cocaine residue, and bulk quantities of suspected cocaine and methamphetamine.

Similar to Hodge, this is a case in which: (1) an informant tipped the police as to a suspected drug dealer, (2) police independently corroborated the informant's information about the suspected drug dealer, and (3) circumstantial evidence, such as the discovery of a bulk quantity of drugs on the suspect in public, suggested that additional evidence could be stored in the suspected drug dealer's residence.  See Hodge, 246 F.3d at 306.  As "it is reasonable to infer that a person involved in drug dealing on such a scale would store evidence of that dealing at his home," Investigator Lackner's affidavits detailing the evidence collected in Mr. Morales-Ortiz's

1993 Honda provided a "substantial basis" to establish probable cause that items related to Mr. Morales-Ortiz's prior drug trafficking arrest would be located inside his residence. Accordingly, the Court denies Mr. Morales-Ortiz's motion to suppress evidence related to the search of his residence.

### C. The Two Subsequent Search Warrants

Given that the first two warrants pertaining to Mr. Morales-Ortiz's Honda Civic and residence are valid, Mr. Morales-Ortiz cannot rely successfully upon a "fruit of the poisonous tree" argument to suppress evidence collected from the third and fourth warrants to search Mr. Morales-Ortiz's residence and the black 2004 Acura TSX found in his garage. Mr. Morales-Ortiz's motion to suppress evidence related to the third and fourth search warrants is likewise denied.[2]

### CONCLUSION

For the reasons set forth above, Mr. Morales-Ortiz's Motion to Suppress Evidence is denied. An Order to this effect follows.

BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge

---

[2] As the Pennsylvania district justices committed no error, the Court does not reach the question of whether the Fourth Amendment good-faith exception, as set forth by United States v. Leon, 468 U.S. 897 (1984), alternatively would endorse the validity of the warrants. However, in passing, the Court notes that no reason to decline to invoke Leon has yet suggested itself in this case.